UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11cv128-3-MU[1]
(3:07cr162)

| | |
|---|---|
| VALON MARCEL VAILES, )<br>)<br>Petitioner, )<br>v. )<br>)<br>UNITED STATED OF AMERICA, )<br>)<br>Respondent. ) | ORDER |

**THIS MATTER** comes before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1); the Government's Motion for Summary Judgment, (Doc. No. 9); and Petitioner's Reply. (Doc. No. 11). For the reasons stated herein, Petitioner's Motion to Vacate will be denied and dismissed.

## I. PROCEDURAL HISTORY

On July 24, 2007, Petitioner was charged in two counts of a four count Bill of Indictment with conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841 and 846; and with possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1). (Crim. Case 3:07cr162, Doc. No. 1: Bill of Indictment). On October 19, 2007 the parties filed a plea agreement with the Court in which the Petitioner agreed to plead guilty to the conspiracy count and to responsibility for more than 1, 000 kilograms but less than 3,000 kilograms of marijuana. (Id., Doc. No. 36). The plea agreement stated that "[i]f

---

[1] This case has been reassigned to the Honorable Graham C. Mullen, Senior United States District Judge, as the Honorable Frank D. Whitney is currently out of the district for an extended period. See 3:11mc67-W, Doc. No. 1.

by the date that [Petitioner] pleads guilty, the United States has filed notice of one or more prior felony drug convictions, the statutory penalties are not less than twenty years nor more than life imprisonment." (Id., at ¶ 4). The plea further stated that Petitioner faced a statutory term of life imprisonment if the Government filed notice of two or more felony drug convictions by the date of the guilty plea. As of October 19, 2007, no such notice pertaining to Petitioner had been filed.

On October 19, 2007, the Petitioner appeared before Magistrate Judge David Keesler. Petitioner stated that he "was kind of confused about the indictment," and that he felt "rushed into" the plea. (Crim. Case 3:07cr162, Doc. No. 101 at 3-4). Petitioner acknowledged that he "played a part" in the conspiracy but stated that he did not understand how he could be responsible for more than the quantity of marijuana he had actually purchased or how he and other co-conspirators could jointly be held responsible for the same drugs. (Id. at 3). The Court asked Petitioner's counsel, C. Jennifer Coble, whether more time would aid her client, and she noted that "if the plea does not happen today, things will be dramatically different" based upon her previous conversations with the Government." (Id. at 4). The Court reconvened the Rule 11 hearing that afternoon, at which time Ms. Coble told the Court that Petitioner had "decided not to enter his plea this afternoon." (Id. at 7). Ms. Coble stated that she was "bothered by this situation and need[ed] to put on the record that [Petitioner was] acting against the advice of counsel." (Id.). She asked the Court for permission to withdraw from the case because she did not feel like she was able to communicate adequately with Petitioner in light of the upcoming trial and "what [was] looming out there." (Id. at 8).

In response to questioning by the Court, Government counsel confirmed that the terms of a future possible plea would change significantly if the signed plea were not filed and accepted, because a § 851 notice likely would be filed, characterizing the decision as "a time bomb ticking

2

which could lead to significantly more time." (Id. at 11). The Court noted that the plea agreement contemplated the possibility of a § 851 notice and recidivist sentence enhancement, and in response to Petitioner's statement that he was willing to plead guilty but not to a quantity of marijuana higher than he actually purchased, the Court noted that "[t]he law on this point is a little bit unusual" insofar as it was "possible for more than one person" to be held responsible for the same drugs. (Id. at 13, 17). The Court also advised that counsel, C. Jennifer Coble, was an "excellent lawyer" and that "[a]voiding that 851 notice [was] of great value to [Petitioner] because it would change the . . . mandatory minimum penalty" he faced. Id. at 17. Petitioner affirmed that he understood the Court's comments regarding the value of avoiding the 851 notice. The Court then continued the hearing to allow the parties additional time to negotiate. (Id. at 18).

The parties did not reach a new plea agreement, and on October 29, 2007, the Government filed a Notice pursuant to 21 U.S.C. § 851 informing Petitioner and the Court of the Government's intent to seek enhanced penalties based on Petitioner two previous felony drug convictions. (Crim. Case 3:07cr162, Doc. No. 38.). On November 15, 2007, the Government filed an Amended Notice pursuant to 21 U.S.C. § 851, seeking enhanced penalties based on Petitioner's four previous felony drug convictions. (Id., Doc. No. 42). On November 16, 2007, a superseding indictment was filed. (Id., Doc. No. 45).

Petitioner's trial began on December 3, 2007. The Court began by allowing Petitioner's counsel, Ms. Coble, to explain that, during her meeting with Petitioner on the previous Friday, Petitioner made it clear that he no longer wanted her to represent him. (Id., Doc. No. 102 at 3). Mr. Coble reported Petitioner's wishes to the Court that same day, adding that she and her law partner, Kenneth Snow, who had been assisting *pro bono*, continued to prepare for trial over the

weekend and were prepared to proceed if necessary. (Id. at 4). When asked to explain his complaint about his attorney, Petitioner stated that they needed "a little more time to go over stuff," and that he felt he should have been more involved with trial preparation, given that he could receive a life sentence. (Id. at 5-7 and 15). In response, Ms. Coble addressed her discussions with Petitioner, including the withdrawn plea agreement and two subsequent plea agreements, which were not accepted, noting that she "used [her] best efforts to talk to [Petitioner]" to review the information with him. (Id. at 21 and 9-10). She stated that the final plea offer was "a good offer," and that she wrote Petitioner a letter detailing the possibility of a life sentence, his options, and her opinion about proceeding. Petitioner, however, ultimately rejected the final plea. (Id. at 22).

The jury convicted Petitioner of both the conspiracy and substantive possession with intent to distribute offenses and found that the conspiracy involved at least 1,000 kilograms of marijuana. (Crim. Case 3:07cr162, Doc. No 57).

In preparation for sentencing, the Probation Officer prepared a Presentence Report ("PSR") calculating an offense level of 34 as to the drug conspiracy offense, based on Petitioner's responsibility for at least 3,000 and less than 10, 000 kilograms of marijuana. (Id., Doc. No. 76). The Probation Officer noted that the mandatory minimum term of imprisonment for the conspiracy count was not less than 20 years, while the statutory maximum term of imprisonment for the possession count was 120 months. (Id. ¶ 74). The Probation Officer calculated a Guidelines range of between 240 months and 262 months. (Id. ¶ 74.)

On March 17, 2009, Petitioner appeared with counsel for a sentencing hearing. (Crim. Case 3:07cr162, Doc. No. 108). In announcing Petitioner's sentence, the Court noted that the conspiracy for which Petitioner was convicted was "extensive" and "involved literally tons of

marijuana" (Id. at 7).  The Court sentenced Petitioner to 250 months imprisonment as to the conspiracy count plus a concurrent term of 120 months imprisonment for the possession count. (Id. at 8).  The Court entered its judgment on March 23, 2009.  (Crim. Case 3:07cr162, Doc. No. 81).  Petitioner filed a timely notice of appeal on April 1, 2009.  (Id., Doc. No. 87).  On appeal, Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Petitioner, although informed of his right to do so, did not file a *pro se* brief.  On March 9, 2010, the Fourth Circuit Court of Appeals affirmed the district court's judgment.  United States v. Vailes, 369 F. App's 450 (4th Cir. 2010).

On March 14, 2011, Petitioner filed the instant Motion arguing that his counsel was ineffective for failing to accurately advise him of the effect of the proposed plea agreement and that the plea agreement was in his best interest.  (Doc. No. 1 -1 at 4).  Specifically, Petitioner asserts that, in advising him concerning the October 2009 plea agreement, "Ms. Coble did not explain to [him] what the plea agreement meant regarding the sentence and the effect of the § 851 notice" and that Ms. Coble "said nothing about the drug weight."  (Id., Doc No. 1-2 ). Petitioner asserts that after signing the agreement, he "had a lot of questions" about "how many years [he] would get and the drug weight [he] was charged with" and that, when he changed his mind about signing the agreement, Ms. Coble "got upset" with him and said she did not want to represent him anymore.  (Id. ¶¶ 7,9).  Petitioner contends that two weeks later, Ms. Coble brought a second plea agreement to him but still failed to explain to him the § 851 notice or "the drug weight agreement in the 2nd plea agreement."  (Id. ¶ 11).  Petitioner asserts that this plea agreement included a drug quantity that, when considered in combination with the § 851 notice, would have yielded a mandatory minimum of 10 years in prison, but that, because Ms. Coble failed to explain these consequences to him, he concluded that there was no difference in

5

accepting the second agreement or going to trial, so he decided to go to trial. (Id. ¶ 12; Doc. No. 1 at 10). Petitioner concludes by stating that had he known that the second agreement "only increased the 5-40 mandatory minimum to 10-Life and that the drug weight was only approximately 114 kg with a guideline range of 92-115 months, [he] would have accepted the 2nd plea agreement." (Doc. No. 1-2 ¶ 13).

In response to Petitioner's Motion to Vacate, the Government filed an affidavit from Petitioner's counsel, Ms. Coble, as well as a copy of a letter she sent to Petitioner on November 20, 2007, five days after the Government filed its amended § 851 notice and two weeks prior to trial. (Doc. Nos. 8-1 and 8-2). In her affidavit, Ms. Coble states that she met with Petitioner after being appointed to represent him and advising him in writing of the nature of the charges pending against him. Ms. Coble states further that she also advised Petitioner in writing of all plea agreements and discussed those agreements with him during jail visits. With respect to the plea offered shortly before trial, Ms. Coble states that she advised Petitioner in writing that he had been offered a revised plea offer and explained the possible sentence he would face if he accepted the offer. (Doc. No. 8-1). In the letter she sent to Petitioner on November 20, 2007, (Doc. No. 8-2), Ms. Coble advised Petitioner that the Government had filed a superseding indictment, as well as an amended information and that the Government identified four prior drug offense convictions, exposing Petitioner to a "**mandatory life sentence**" if convicted. (Id.) (emphasis in original). Ms. Coble explained that the Sentencing Guidelines would not apply if he were convicted and the prior convictions were valid, because "the statute require[d] mandatory life" and that "[t]he only way [he] would avoid the life sentence [was] if there were a problem with the prior convictions." (Id.) Ms. Coble noted that she was enclosing a new plea offer and that "this plea [was] what [they] initially asked for back in October after [she] and

6

[Petitioner] reviewed the discovery – 250 pounds of marijuana." (Id.). Ms. Coble explained that if Petitioner accepted the plea, he would "face a ten (10) year sentence for this conviction and avoid the possible life imprisonment." (Id.). Ms. Coble "strongly suggest[ed] that Petitioner consider the plea, noting that there was "strong evidence that [Petitioner] did attempt to possess at least 100 pounds of marijuana during the buy in July" and that "the ledgers indicate[d] additional amounts purchased or monies owed for drugs obtained." (Id.) Finally, Ms. Coble explained that if Petitioner chose to go to trial, his conviction would result in a life sentence regardless of whether the jury found that he tried to buy "100 lbs or 250 lbs or 1000 kilos." (Id.). According to Ms. Coble, Petitioner "refused to accept the plea" and later attempted to fire her on the eve of trial, refusing to discuss the case with her. (Doc. No. 8-1).

Petitioner filed a reply brief in which he argues that after he decided not to accept the first plea agreement and his counsel attempted to resign from his case, he lost confidence in Ms. Coble, which he contends "she did nothing to reestablish [his] confidence although [he] was prepared to work with her." (Doc. No. 11 at 4). Petitioner contends that he was confused about the implications of a possible § 851 notice after he refused the first plea. He states that he never understood, at that time he refused the first plea offer, that no § 851 notice had yet been filed. When counsel wrote him in November 2007 about the new plea offer, she still did not address the § 851 notice, she did not endeavor to find out that of the four listed prior felonies, "[he] was only responsible for one of them. Had she done so, she would not have presented to me the possibility of a mandatory life sentence if [he] went to trial." (Doc. No. 11 at 3). Petitioner concludes that "based on the piecemeal explanations by Ms. Coble of the complex plea agreements that were offered, the misinformation that was used to present my opinions, the intimidation of the courtroom environment, the scare tactics and time constraints imposed upon

7

me due to Ms. Coble's 'busy schedule,' my sixth amendment rights to adequate counsel were violated." (Id.).

## II. LEGAL DISCUSSION

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether a petitioner is entitled to any relief. If the motion is not dismissed after that initial review, the court must direct the government to respond. Id. The court must then review the government's answer and any materials submitted by the parties and determine whether an evidentiary hearing is warranted pursuant to Rule 8(a). Following such review, it is clear to the Court that Petitioner is entitled to no relief on his claims; thus a hearing is not required. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687-91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639. 2648, 91 L.Ed.2d 197 (1986) (quoting United States v. Frady, 456 U.S. 142, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland

prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d at 1430-31 (4th Cir. 1983)). Therefore, if Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S.Ct. at 2069).

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). In the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 474 (4th Cir. 1988).

A petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983).

Petitioner contends that his Sixth Amendment rights were violated when trial counsel failed to advise him of the effect of the plea agreement and that, had Ms. Coble advised him that he faced mandatory minimum of 10 years under the revised plea agreement, he would have accepted that agreement and avoided a jury trial and life sentence.

With respect to Petitioner's contention that his attorney failed to explain the consequences of his first plea agreement, the Court notes that the plea agreement, which was signed by the Petitioner but not accepted by the Court, included Petitioner's acknowledgment

9

that he faced a mandatory minimum term of imprisonment of 10 years in prison and that he was responsible for between 1,000 and 3,000 kilograms of marijuana. Moreover, the Court did not accept the first plea agreement in large part because Petitioner expressed "confusion regarding the indictment" acknowledging that he "played a part' in the conspiracy but stating that he did not understand how he could be responsible for more than the quantity of marijuana he had actually purchased. (Crim. Case 3:07cr162, Doc. No. 101 at 3). The Court recessed the hearing until after lunch to provide counsel time to discuss the plea agreement with her client. When the hearing resumed, counsel informed the Court that Petitioner decided not to enter the plea. (Id. At 6-7). Counsel indicated that Petitioner was acting against her advise and asked to withdraw. The Court then spent time with Petitioner explaining that the current plea agreement contemplated the possibility of a § 851 notice which could lead to more time. (Id. at 17). With respect to Petitioner's confusion regarding the quantity of marijuana, the court noted that "[t]he law on this point is a little bit unusual" insofar as it was "possible for more than one person" to be held responsible fort he same drugs. (Id. at 17). The record establishes that the first plea agreement, which Petitioner signed, included language contemplating the possibility of an § 851 notice and recidivist sentence enhancement. (Crim. Case 3:07cr162, Doc. No. 36). Further, the Court spent time with Petitioner explaining the plea agreement and the possibility § 851 notice. Therefore, to the extent that counsel did not make clear that Petitioner was facing increased penalties if a § 851 notice was filed, the plea agreement contained such language and the Court explained this to Petitioner. In the end, Petitioner chose not to accept the first plea agreement, even after the Court recessed the hearing to allow counsel to speak to Petitioner and clear up his confusion regarding the plea agreement and even after the Court spent considerable time discussing the plea agreement with Petitioner. Therefore, with respect to the first plea

10

agreement, Petitioner has not established that his counsel was ineffective.

Next, with respect to the final plea agreement, Petitioner argues that his counsel did not explain the drug weight or the sentencing consequences of the plea agreement and specifically that she did not explain that the agreement would result in a ten-year mandatory minimum sentence. Petitioner states that he would have signed this plea agreement if he had known that it included the possibility of a ten year sentence.

Counsel's letter to Petitioner, which is attached as an exhibit to the Government's Motion for Summary Judgment, belies Petitioner's claim. (Doc. No. 8-2). Indeed, in the letter dated November 20, 2007, counsel advised Petitioner that the Government had filed a superseding indictment, as well as an amended information identifying four prior felony drug offenses, exposing Petitioner to a mandatory life sentence if convicted. (Doc. No. 8, Ex. 2). Ms. Coble explained that the only way Petitioner would avoid a life sentence if convicted at trial was if there was a problem with the prior convictions. Ms. Coble also noted that she was enclosing a new plea offer, which she described as the plea that they initially asked for back in October when she and Petitioner reviewed the discovery. Ms. Coble further explained that if Petitioner accepted the plea, he would "face a ten (10) year sentence for this conviction and avoid the possible life imprisonment." (Id.). Ms. Coble "strongly suggest[ed]" that Petitioner consider the plea, noting that there was "strong evidence that [Petitioner] did attempt to possess at least 100 pounds of marijuana during the attempted buy in July" and that "the ledgers indicate[d] additional amounts purchased or monies owed for drugs obtained." (Id.). Further, the record reflects in a hearing held on the morning of trial, counsel referenced the above letter to the Court in connection with the Court's questions regarding Petitioner's complaint against her. (Crim. Case 3:07cr162, Doc. No. 102 at 21-22). Counsel explained that she conveyed the

Government's final plea offer to Petitioner via a letter dated November 20, 2007 which she had her paralegal hand deliver the morning of November 20, 2007. Counsel stated that she included information in the letter about the life sentence Petitioner was facing, his options and her opinion as to how he should proceed. Counsel explained to the Court that she went to visit Petitioner later that evening and Petitioner rejected the plea offer. (Id.).

Petitioner has not established that his counsel was ineffective for failing to fully explain the plea agreement to him. The record, especially counsel's letter to Petitioner, reflects that Ms. Coble explained the crucial elements of the plea agreement to the Petitioner. Petitioner must now live with the consequences of his choice not to accept that plea agreement. However, he has not established that his counsel was ineffective in connection with her advise regarding the plea agreement. Petitioner has not established the deficiency prong of the Strickland test; therefore Petitioner's claim must fail.

## IV. CONCLUSION

The Court has considered the pleadings and documents submitted by the Petitioner and the entire record of this matter and finds that it is clear that Petitioner is not entitled to relief on his claims of ineffective assistance of counsel.

## V. ORDER

**IT IS, THEREFORE ORDERED** that:

1. The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DENIED and DISMISSED**;

2. The Government's Motion for Summary Judgment is GRANTED;

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a

substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)(citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

**SO ORDERED.**

Signed: November 8, 2011

Graham C. Mullen
United States District Judge